UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM HALLOCK,

                        Plaintiff,

v.                                                                          5:16-CV-0825
                                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

STANLEY LAW OFFICES                                   STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                           JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 13.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by William Hallock ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

Plaintiff was born in 1966. (T. 131.) He received his GED. (T. 145.) Generally, Plaintiff's alleged disability consists of depression, social disorder, anxiety, and attention deficit hyperactivity disorder ("ADHD"). (T. 144.) His alleged disability onset date is May 12, 2010. (T. 131.) He had no past relevant work.

### B.   Procedural History

On May 29, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 66.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 6, 2014, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 26-55.) On February 3, 2015, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-25.) On May 11, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-22.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 29, 2013. (T. 17.) Second, the ALJ found that

Plaintiff had the severe impairments of panic disorder with agoraphobia, attention deficit hyperactivity disorder ("ADHD"), major depressive disorder with psychotic features, intermittent explosive disorder, and a history of alcohol abuse. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-19.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with additional non-exertional limitations. (T. 19.) The ALJ determined that Plaintiff could work at simple, routine and repetitive tasks, should work in low stress jobs defined as occasional decision making, occasional judgment, and occasional changes in the work setting, and should have only occasional contact with co-workers, supervisors, and the public. (T. 19-20.) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 21-22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was not supported by substantial evidence and was the product of legal error. (Dkt. No. 11 at 4-6 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ did not evaluate Plaintiff's subjective statements in accordance with the relevant legal standard. (*Id.* at 6-8.) Third, and lastly, Plaintiff argues the ALJ erred in her step five determination because the

hypothetical posed to the vocational expert was based on a faulty RFC determination. (*Id.* at 8-9.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the evidence in determining Plaintiff's RFC. (Dkt. No. 12 at 3-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 9-11.) Third, and lastly, Defendant argues that the ALJ correctly determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 11-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including Plaintiff's medical record, statements by physicians, and Plaintiff's descriptions of limitations. *Id.* at § 416.945. The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id.* at § 416.927(c)(1)-(6).

The medical evidence in the record pertaining to Plaintiff's mental health is sparse. The State agency consultants were the only medical sources to provide medical source statements. The medical record contained some mental health treatment notations; however, there were no medical source statements provided by a treating source.

6

Plaintiff argues that the ALJ erred as a matter of law in granting more weight to a non-examining review psychologist, Dr. T. Inman-Dudon, than to the examining consultative examiner, Jeanne Shapiro, Ph.D. (Dkt. No. 11 at 5 [Pl.'s Mem. of Law].)

On July 22, 2013, Dr. Shapiro examined Plaintiff and provided a medical source statement. (T. 218-222.) Dr. Shapiro opined that Plaintiff had no limitations in understanding and following simple instructions and directions, and performing simple tasks. (T. 221.) She stated that Plaintiff had mild limitations maintaining attention and concertation for tasks. (*Id.*) Dr. Shapiro opined that Plaintiff had a moderate limitation regarding his ability to attend to a routine and maintain a schedule. (*Id.*) She opined that Plaintiff had a mild to moderate limitation regarding his ability to make appropriate decisions. (*Id.*) Dr. Shapiro opined Plaintiff had a moderate limitation in his ability to relate to and interact well with others and a mild to moderate limitation regarding his ability to deal with stress. (*Id.*)

On August 2, 2013, Dr. Inman-Dundon, reviewed the record and completed a mental RFC form. (T. 56-65.) The doctor opined, in relevant part, that Plaintiff was moderately limited in his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (T. 62-63.) Dr. Inman-Dundon also stated that Plaintiff was moderately limited in his ability to: respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others. (T. 63.) In a narrative, Dr. Inman-Dundon stated that

Plaintiff was able to perform unskilled work, but could not work closely with others. (*Id.*) Elsewhere in her report, Dr. Inman-Dundon stated that the opinion of the consultative examiner was given "great weight" because it was supported by the totality of the medical evidence in the file. (T. 61.)

In formulating her mental RFC, the ALJ afforded "great weight" to Dr. Inman-Dundon's opinion. (T. 21.) The ALJ reasoned that the opinion was from an acceptable medical source who reviewed the record and the opinion was consistent with clinical findings, treatment history, and Plaintiff's reported activities of daily living. (*Id.*) The ALJ afforded Dr. Shapiro's opinion "partial weight." (*Id.*) The ALJ concluded that Dr. Shapiro's findings, that Plaintiff had moderate limitations in attending a routine and maintaining a schedule, were inconsistent with Plaintiff's lack of deficits in attention, concentration, and memory during exams and reported ability to attend doctor's appointments on a regular basis. (*Id.*)

As a matter of law, the ALJ did not err in affording more weight to the non-examining State agency medical consultant than the consultative examiner. An ALJ may rely upon the opinion of a non-examining State agency medical consultant, such as Dr. Inman-Dundon, because such consultants are deemed to be qualified experts in the field of social security disability. *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-152 (N.D.N.Y. 2012) (citing*, inter alia, Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")). The Second Circuit has even held that the opinion of a non-examining

State agency medical consultant may outweigh the opinion of a treating source.  *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations ... permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")).  Therefore, the ALJ did not err as a matter of law in affording more weight to the non-examining source than to the examining source.

Plaintiff next contends that Dr. Inman-Dundon's opinion cannot constitute substantial evidence because the doctor based her opinion on a "stale" record.  (Dkt. No.)  To be sure, statements that are "conclusory, stale, and based on an incomplete medical record" may not be considered substantial evidence to support an ALJ finding.  *Griffith v. Astrue,* No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. July 27, 2009).  First, Dr. Inman-Dundon's opinion was not "conclusory," but extensive and contained a review of the record, medical source statements, and narratives.  (T. 56-65.)  Second, although Dr. Inman-Dundon's opinion was not based on the whole administrative record, evidence submitted after the doctor issued her opinion demonstrated substantially similar limitations and findings.  *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-344 (W.D.N.Y. 2015), *aff'd,* 652 F. App'x 25 (2d Cir. 2016) ("based on only part of the overall administrative record, the treatment notes and opinions in the record before and after [the doctor's] opinion demonstrate substantially similar limitations and findings").  Because the records submitted after Dr. Inman-Dundon's review contained information that was substantially similar to the information she had before her, any error was harmless.

Here medical records submitted after Dr. Inman-Dundon's review did not contain medical source statements from treating providers, evidence of new or worsening conditions, or any other evidence that was substantially different from the medical evidence Dr. Inman-Dundon had before her. Therefore, the medical evidence obtained after Dr. Inman-Dundon's opinion was substantially similar to the evidence the doctor had and would not likely change her ultimate opinion regarding Plaintiff's mental functional abilities.

Dr. Inman-Dundon reviewed the record on August 2013. (T. 63.) The record contained the examination and opinion of Dr. Shapiro; treatment notations from Deepak Advani, M.D.; treatment notations from Tiffany Garofono, LCSW with the Wayne Behavioral Health Network; and treatment notations from Oswego Hospital Behavioral Services. (T. 57-59, 193-276.) Therefore, Dr. Inman-Dundon did not review medical evidence submitted by Thomas Griffiths, Ph.D. and providers at Rochester General Hospital. (T. 268-325.)

In August 2012, Dr. Advani treated Plaintiff for back pain and noted Plaintiff was alert and oriented with normal mood and affect. (T. 196, 200.) Dr. Advani noted Plaintiff was dealing with stress due to his ill father and had an appointment with mental health. (T. 202.) Providers noted Plaintiff's mental health symptoms were stable. (T. 205.) In December of 2012, Dr. Advani renewed Plaintiff's prescription for Xanax. (T. 214.) Plaintiff informed providers at Oswego Mental Health that his medication was not working. (T. 232, 233.) However, in February of 2012 he indicated that he was "feeling better." (T. 234.) In March of 2012, Plaintiff informed his provider that he felt "pretty good," was not getting as mad, his mood had improved, and he was getting out of the

house "somewhat." (T. 236.) Plaintiff informed providers he was feeling "all right," and "average." (T. 238, 239, 240.) Plaintiff was discharged from treatment, due to "no shows" in September 2012. (T. 241.) Ms. Garofono met with Plaintiff twice before he was discharged from Wayne Behavior Health in 2012. (T. 244.) Ms. Garofono observed Plaintiff to be well groomed, cooperative, and calm. (T. 245.) Plaintiff's mood was anxious, his affect flat, and his thought form was focused. (*Id.*) Plaintiff's orientation, memory, and concentration were intact. (T. 246.)

Dr. Griffiths's notations provided a summary of Plaintiff's mental health history, symptomology, and medication. (T. 269-270.) Notations from Rochester General Hospital dated July 18, 2014, indicated Plaintiff was not able to see a psychologist, but was taking medication for his mental health impairments. (T. 288.) Plaintiff sought treatment on August 19, 2014 for an injury to his wrist he received while jet skiing. (T. 301.) Providers noted Plaintiff's mood and affect were normal. (T. 302.) On September 18, 2014, Plaintiff informed providers that his medications were helping with his anxiety and he planned on returning to counseling because it helped him in the past. (T. 315.) Although additional records, as outlined above, were submitted after Dr. Inman-Dundon conducted her review the evidence did not provide any information that could reasonably have affected the doctor's opinion.

Plaintiff next argues that the limitations provided by Dr. Shapiro "equate to a substantial loss of ability to meet the basic mental demands" of unskilled work. (Dkt. No. 11 at 6 [Pl.'s Mem. of Law].) Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with

changes in a routine work setting.  20 C.F.R. § 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985).  The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) ("[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted); *see Whipple v. Astrue*, 479 Fed. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  Therefore, contrary to Plaintiff's assertions, a moderate limitation in functioning would not necessarily preclude the ability to perform unskilled work.

In addition, both sources took into consideration Plaintiff's moderate limitations and opined that he was nonetheless capable of unskilled work.  Although Dr. Shapiro opined Plaintiff had moderate limitations in certain functional areas, she also opined that Plaintiff was capable of understanding and following simple instructions and directions and performing simple tasks.  (T. 221.)  Dr. Inman-Dundon took Dr. Shapiro's limitations into consideration, provided them "great weight," and opined that those limitations were

not inconsistent with the ability to perform unskilled work that did not require he work closely with others. (T. 61-63.) Dr. Inman-Dundon also determined, as outlined herein, that Plaintiff had moderate limitations in certain areas of functioning and concluded Plaintiff could perform unskilled work. (T. 63.) Based on the only two medical opinions in the record, it appears that any error they ALJ may have made in discounting Dr. Shapiro's "moderate" limitations would be harmless, because both doctors opined that despite those limitations Plaintiff was capable of unskilled work.

Therefore, it is recommended that the ALJ's weighing of the medical opinion evidence be upheld. The ALJ did not err as a matter of law in affording more weight to a non-examining State agency medical consultant than a consultative examiner. Further, although the non-examining State agency medical consultant did not review the medical record in its entirety, evidence provided after her review was substantially similar to the evidence she did review.

### B. The ALJ's Credibility Analysis

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly

and withسufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (T. 20.)

Plaintiff argues that the ALJ failed to apply the relevant legal standard in evaluating Plaintiff's credibility. (Dkt. No. 11 at 6-8 [Pl.'s Mem. of Law].) Specifically,

Plaintiff contends that in making her credibility determination the ALJ relied onlyl on Plaintiff's work history.  (*Id.* at 7.)

Contrary to Plaintiff's contention, the ALJ properly applied the relevant legal standard in evaluating Plaintiff's credibility and the ALJ relied on more than Plaintiff's work history.  Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  In making her credibility determination, the ALJ discussed objective medical evidence in the record, Plaintiff's treatment history, his reported activities of daily living, and his work history.  (T. 20.) Therefore, contrary to Plaintiff's assertion, the ALJ properly applied the relevant legal standard in evaluating Plaintiff's credibility and it is recommended that the ALJ's credibility determination be upheld.

### C.  The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred in his step five determination because the hypothetical posed to the vocational expert was based on a faulty RFC determination. (Dkt. No. 11 at 8-9 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d

Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 31, 2017

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge